ROBERT L. BLAND, Judge,
dissenting.
Since I am not in accord with the determination made by majority members of the court of the claim involved in this case and cannot concur in the majority opinion awarding the claimant the sum of $880.45, I most respectfully record this dissent from said award for the reasons hereinafter set forth.
The claim is asserted and prosecuted against the state board of control, which state agency exercises jurisdiction over the West Virginia school for boys at Pruntytown, to obtain an appropriation from the Legislature for the alleged theft of and damages done to a certain automobile in the possession of and owned by the claimant, by three escapees from said West Virginia school for boys. The proceeding is distinctly one predicated upon alleged negligence of the officials of the state charged with the duty of managing and operating said School for Boys. Negligence is the gist of the proceeding.
The Court of Claims, prior to the time it became presently constituted, in the case of George Coy, Jr., by George Coy, Sr., his next friend, v. State Board of Control, 3 Ct. Claims (W. Va.), held in point two of the syllabi, as follows:
“II. The West Virginia industrial school for boys at Pruntytown is held to be a penal institution within the meaning of section 14 of the act creating the court of claims.”
Since the majority opinion neither disapproves nor overrules such holding it is manifest that the claimant seeks to charge the sovereign state of West Virginia with negligence arising out of the conduct and management of said West Virginia school for boys, and a majority of the court have placed the stamp of approval upon said claim.
I think it is a sound and well recognized rule of law that the state in the conduct of its penal institutions is engaged in a governmental function, and in the exercise thereof it is *193 not responsible for the negligent acts of its servants, agents or inmates in the absence of a statute making it so liable.
Since' the state is inherently sovereign at all times and in every capacity the state, by taking over an enterprise, usually of the nature of a private business, is not hampered by the private character thereof, and so there is no basis for charging the state thus engaged with liability for torts of its officers and agents. 59 Corpus Juris 195.
I think it may reasonably be said that the prevailing rule is that “The state in the conduct of its penal institutions is engaged in a governmental function, and in the exercise thereof is not responsible for the negligent acts of its servants, agents or inmates in the absence of a statute making it so liable.”
The claim asserted against respondent in the instant case is not of the type or character for which the court of claims may properly make an award or for which the Legislature may make a valid appropriation of the public funds. The following excerpt taken from the opinion of the court in the case of Murdock Parlor Grate Co. v. Commonwealth of Massachusetts, reported in 8 L.R.A. (2nd), 399, is pertinent in the consideration of the instant case:
“The object of the statute cannot have been to create a new class of claims for which a Sovereignty has never been held responsible, and to impose a liability therefor, but to provide a convenient tribunal for the determination of claims of the character which civilized governments have always recognized, although the satisfaction of them has been usually sought by direct appeal to the sovereign, or in our system of government, through the Legislature."
And the following .statement, taken from an Illinois court of claims opinion, has peculiar significance in the interpretation of the act of the Legislature creating the court of claims of West. Virginia:
*194 “In creating the Court of Claims the Legislature of Illinois did not create a cause of action nor a right of action in any given case, but merely provided a forum wherein claimants against the State might submit their grievance, and where, if a legal basis for redress was shown to exist, an award might be obtained.”
Although I maintain that any award in favor of the claimant in this case is improper and contrary to public policy when made upon the basis of negligence, I may add that no negligence of the state or of the boys industrial school at Prunty-town is actually disclosed by the evidence heard upon the investigation of the claim in question. I do not think that any person reading the facts as set forth in the majority opinion can see any negligence. In the recent case of Bennett v. Edgar B. Sims, Auditor, the opinion set forth in detail the facts supporting an award made by the court of claims and held that nothing in said facts would support an appropriation of public funds.
The decision of our Court of Appeals in the late case of Price v. State Road Commission is no warrant for the award made in this case. Every claim must be determined upon the basis of its own facts. The Price decision merely held that under circumstances set forth in the opinion an award of public funds would be sustained. There is, however, quite a difference between the facts in the Price case and the facts in the instant case, and also quite a difference in the law controlling the determination made in the instant case. No support for the award is found in the Supreme Court case of State ex rel, Davis Trust Company v. Board of Control. In that case the Supreme Court sustained the legislative appropriation upon the ground of the gross negligence of the warden of the penitentiary. Such decision was based upon the peculiar facts of the case and could not, in my judgment, support the award made in the instant case.
I do not see how anything appearing in the testimony of L. Steele Trotter, a member of the board of control, could be *195 construed in any respect as supporting, much less tending to establish, the contention of claimant that the West Virginia industrial school for hoys at Pruntytown, “heedlesly and consciously made the escape of these boys on August 29, 1946, easily possible, with results to be anticipated, in that these bojrs were given the liberty of the fields and lawns and in a group of fifteen to twenty-five boys all under the surveillance of only one guard or some older boy powerless to prevent escape.” It very clearly appears from the testimony of Mr. Trotter that the Pruntytown institution is maintained and operated in accordance with the plan adopted and followed by similar institutions in many of the states of the Union. As a matter of fact, the evidence adduced before the court of claims showed the institution to be conducted most commendably. The care and treatment of such inmates is definitely performed as a governmental function and while the management of such institutions may see fit to have such inmates engage in various occupations, such activity is recognized as being for the primary purpose of occupying the time of such inmates. Apparently the majority opinion would take the position that inmates of the Pruntytown institution should be confined in cells and that high walls should enclose the several hundred acres of land belonging to the institution. The opinion loses sight of the testimony relative to the commandoes who are in charge of the inmates and of the older inmates who frequently exercise surveillance over the younger one. I do not think that it is within the province of the court of claims to establish or promulgate a plan for the care and treatment of the inmates of the institution. Men of wide experience in educational work, such as the present head of the institution and his predecessor, Mr. Mollohan, with high and skilled training and judgment have worked out a plan approved by similar institutions in other judisdictions. It must be borne in mind that all of the inmates of the institution have been committed therein by the order of courts of law of the state on account of incorrigibility. It would require a vivid imagination to find anything in the record that would support the conclusion that any official connected with the institution could foresee what happened in relation to the escapes made by the three boys under con *196 sideration, or that they contributed in any way or were responsible in any way for such escapes. To hold the state responsible in damages in the instant case is foreign to all law that controls in cases like the present. The award could not be based upon any legal right possessed by the claimant and no equitable principle may properly be invoked to support the award. How, therefore, could there be a moral obligation upon the State to compensate the claimant for the damages suffered by him as set forth in his petition praying for compensation?
For a period awards made in the court of claims had three hurdles, the Legislature, the auditor (the guardian of the public revenues of the state) and the Supreme Court of Appeals. The latter tribunal has, however, in numerous recent decisions given the court of claims much enlightenment and guidance. We now have precedents which are helpful.
In conclusion, I can only say, that if the public revenues may be appropriated upon the facts set forth in the majority opinion,

God save the State!